IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 00-CR-126-HDC |
| ) | |
| KENNETH WAYNE STIGER, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter came before the Court for an evidentiary hearing on May 4, 2006, on remand from the Tenth Circuit Court of Appeals following defendant Kenneth Wayne Stiger's direct appeal.

Background

On July 20, 2001, defendant Stiger was charged in Count One of the Second Superceding Indictment with conspiracy to distribute and possession with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846; and in Count Four with conspiracy to commit laundering of monetary instruments in violation of 18 U.S.C. § 1956(b). The trial lasted 23 days, covering the testimony of 58 witnesses. On June 26, 2002, the jury returned a verdict of guilty against Stiger as to both counts. On February 20, 2003, defendant Stiger was sentenced to life imprisonment on Count One, and 20 years on Count Four, to run concurrently with each other. On that same day, defendant Stiger filed a notice of appeal to the Tenth Circuit Court of Appeals.

In its opinion filed on June 30, 2005, the Tenth Circuit set forth in relevant part the defendant's allegations on appeal, as follows:

> Well into the trial, Mr. Stiger's counsel moved for a mistrial based on the fact that attorney Robert Burton visited with him on several occasions about representing him in this case. The visits were unfruitful for Mr. Burton, as the District Court ultimately appointed another attorney to represent Mr. Stiger. The District Court, however, appointed Mr. Burton and his law partner to represent Richard Taylor, one of Mr. Stiger's codefendants. Mr.

> Taylor entered a guilty plea prior to Mr. Stiger's arraignment and became a witness for the government at Mr. Stiger's trial. Mr. Burton continued to represent Mr. Taylor throughout the course of this testimony.
> Mr. Stiger's trial counsel claims that he was not initially aware of Mr. Burton's conversations with Mr. Stiger. Upon learning of these conversations, however, trial counsel moved for a mistrial based upon a conflict of interest. Trial counsel stated that Mr. Burton "visited [his] client three times before th[e] trial started" and that the two spoke "several times about the case," although he could not say with certainty whether those conversations would prejudice his client.

United States v. Stiger, 413 F.3d 11,85, 1194 (10th Cir. 2005).

### Remand Instructions

On appeal, Stiger claimed that the Court erred in not conducting an evidentiary hearing before dismissing his conflict-of-interest claim. He claimed that summary dismissal of his motion for mistrial violated his rights to due process, confrontation of witnesses and conflict free counsel. The Tenth Circuit construed Stiger's motion for mistrial as an untimely motion to disqualify counsel and remanded with instructions for this Court to hold a fact finding hearing to determine: whether an "actual attorney-client relationship existed" between defendant Stiger and attorney Robert Burton, and, if so, whether that relationship affected Stiger's "right to a fair and impartial trial."

### Findings of Fact

From a review of the testimony and in consideration of the credibility of the witnesses, the Court enters the following findings of fact.

1.      Robert Burton was called as a witness by the defendant. Mr. Burton is a licensed attorney in the State of Oklahoma and has been employed by the R. Thomas Seymour law firm for ten years.

2.     R. Thomas Seymour was called as a witness by the defendant.  Mr. Seymour and the Seymour law firm were appointed to represent Richard Taylor, a co-defendant in this case in April 2001.

3.     Tulsa attorney Brad Fuller testified as a witness on behalf of the government.  Mr. Fuller has been a licensed attorney in the State of Oklahoma since 1987 with the law firm of Fuller, Chlouber & Frizzell.

4.     Mr. Fuller was contacted by a family member of Stiger's in 2001.  Mr. Fuller had little experience in handling complex federal criminal matters, so he contacted the Seymour law firm before meeting with Stiger.

5.     Mr. Fuller initially spoke to Mr. Seymour.   Mr. Seymour told Mr. Fuller that his law firm would be interested in assisting as co-counsel if Fuller could work out arrangements for the legal fees and also a waiver.  Mr. Seymour further stated that a conflict of interest waiver had to be executed by both defendant Stiger and the other co-defendant, Richard Taylor.  Mr. Fuller testified that he did not know at the time he went to Wichita with Mr. Burton to visit Stiger that defendant Taylor was a cooperating government witness.

6.     R. Thomas Seymour has been a practicing attorney in Tulsa for nearly forty years. Mr. Seymour has represented criminal defendants in federal court since 1986. More than 95 percent of his law practice is in federal court. Mr. Seymour has experience representing multiple defendants in a case and on each such occasion he has required each defendant to sign a conflict of interest waiver. It is his standard practice and the policy in his law firm to require written conflict of interest waivers when his law firm agrees to represent multiple defendants. If a waiver is not obtained, his law firm will not represent the second potential client.  Mr. Seymour testified that he would refuse

3

to discuss any matter of substance or any facts of the case with the second potential client without an executed waiver. If the second potential client tried to volunteer information, Mr. Seymour testified that he would get up and walk away. The Court finds credible Mr. Seymour's testimony that he specifically instructed his associate Robert Burton on how to handle a conflict situation and how waivers were to be handled.

7. The Seymour law firm represented defendant Taylor from his initial appearance in this case, immediately following the filing of the indictment in April 2001. Defendant Taylor was arrested in late April or early May 2001. On May 15, 2001, Taylor participated in a Rule 11 or a proffer session, to provide information that he believed to be of value to the government to gain substantial assistance. Mr. Burton was not present for any of the Rule 11 meetings between defendant Taylor and the government.

8. Government's Hearing Exhibit 1 is a summary of defendant Taylor's interview with government agents on May 15, 2001. Present at that interview was Mr. Seymour and an intern with his law firm, Scott Graham.

9. The second debriefing of defendant Taylor by government occurred on May 17, 2001. Mr. Seymour was the only member of his law firm that was present representing defendant Taylor.

10. The final Rule 11 interviews with defendant Taylor occurred on May 24, 2001 and June 8, 2001. Mr. Seymour was the only member of his law firm present at those meetings.

11. Mr. Seymour personally negotiated a cooperation agreement with government where defendant Taylor would receive credit for substantial assistance.

12. The Court finds and the evidence shows, that after defendant Taylor completed his Rule 11 meetings with the government Mr. Burton did have some limited involvement in the case.

13. Mr. Burton knew that defendant Taylor was a cooperating witness for the government and that he was involved in several proffer sessions. However, Mr. Burton was not involved in the substantive proffer efforts.

14. Mr. Burton's involvement consisted of his review of a DEA-6 report. Mr. Burton prepared a memoranda which addressed clerical corrections to the report, such as proper spelling of words and similar matters.

15. Mr. Burton was aware of the content of these DEA-6 reports.[1] These reports contained information regarding Taylor's involvement with Darrell Bellamy, and Bellamy's involvement with the conspiracy.

16. Mr. Burton received a phone call from Brad Fuller informing him that family members of Stiger were inquiring into legal representation of defendant Stiger in Tulsa. Mr. Burton told Mr. Fuller that the firm represented defendant Taylor and that Stiger would have to sign a written waiver before the firm would be involved. The evidence clearly indicated, and the Court so finds, that the Seymour law firm would not represent Stiger unless Stiger and Taylor both signed conflict of interest waivers. The Court finds that Mr. Burton's and Mr. Seymour's insistence on a written conflict of interest waiver was, in part, because of Mr. Burton's knowledge of his law firm's active involvement in Taylor's defense.

17. Another indication of the credibility of Mr. Burton's testimony is that Burton had already obtained a signed waiver by Tracy Buchanan, who was a testifying witness at trial in this case.

---

[1] DEA-6's are semi-formal reports which are generated by government agents who conduct interviews with cooperating criminal defendants. Usually they contain the name of the cooperating witness and a summary of his testimony.

18. Mr. Burton testified that he spoke briefly to defendant Stiger on only two occasions. The Court finds Stiger's testimony that he met with Burton on three occasions is not supported by the evidence.

19. Mr. Burton first met with defendant Stiger on the day of Stiger's Rule 40 proceeding in Wichita, Kansas. Mr. Burton did not participate in the Rule 40 proceeding, nor did he speak to the Assistant U.S. Attorney handling the Rule 40 proceeding. It is the finding of the Court that Mr. Burton traveled to Wichita, Kansas to speak to defendant Stiger at the request of Mr. Fuller, not at the request of defendant Stiger.

20. Fuller and Burton traveled to Kansas on August 13, 2001. Prior to leaving for Wichita, Mr. Burton did not have any discussions with Mr. Seymour about what Mr. Seymour had learned from his representation of defendant Taylor in this case.

21. The lawyers' meeting with Stiger in Wichita lasted between 10 to 30 minutes with Mr. Fuller doing most of the talking. The meeting occurred in the marshal's holding cell in Wichita. Burton testified:

> I advised Mr. Stiger that I represented a co-defendant in his case, Mr. Taylor, that our firm did and that as a result I represented [him]. I explained to him that [dual representation] wasn't insurmountable, that we also had a material witness that was involved in the case that I had represented where we had signed waivers and resolved that conflict issue. I said before I could proceed in terms of substantive discussions with respect to the details of his case, we would have to have those waivers signed. And then also there was the issue of the retainer and the money issue but that was an issue that Brad [Fuller] dealt with. And I explained to Brad, you know, this is your deal on that issue but I have to get these waiver issues taken care of before I can even substantively get involved in the case and really get going.

Hearing Tr. 11, p.6-17.

22. Mr. Fuller and Mr. Burton separately testified that their conversation with Stiger involved explaining to him their role, in the event Stiger decided to retain them. The Court finds

credible the attorneys' corroborating testimony that they spoke primarily about the legal fees and the conflict waiver, and that the conversation did not progress to the point that a waiver was ever presented to Stiger.

23. Mr. Burton testified that both defendants, Stiger and Taylor, would have had to sign waivers before he could represent Stiger. The issue was never presented to defendant Taylor because defendant Stiger ultimately decided not to retain Mr. Fuller or the Seymour law firm.

24. Mr. Burton testified: "I didn't know specifics with respect to any substantive issues of his case or his thinking or his decisions at that point at all." Tr. P.12 p. 7-9.

25. Mr. Burton testified that the only persons present in the marshal's holding cell at the federal courthouse were defendant Stiger, Mr. Fuller and himself. The Court finds that Stiger's testimony that another unidentified female was present at the holding cell in Wichita on that occasion is not credible nor supported by the evidence.

26. The other occasion in which Mr. Burton met defendant Stiger was in Tulsa in late August 2001. Mr. Fuller contacted Mr. Burton advising that defendant Stiger was in Tulsa for his initial appearance and arraignment. The two lawyers had a very brief meeting with Stiger in the Page Belcher Federal Building in the marshal's holding cell. The purpose of the meeting was to explore whether Stiger's family could raise sufficient funds to retain private counsel for Stiger. Mr. Burton testified that there were no substantive discussions with Stiger.

27. The Court finds and the evidence supports Mr. Burton's testimony that he was never hired to represent Stiger, and that Stiger never executed a waiver of conflict of interest.

28. When asked about his plan to represent both defendants, Stiger and Taylor, and whether he would require a written waiver, Mr. Seymour testified:

> Absolutely. And I define representation to include any knowledge of facts. It isn't – the paying of the money is not the trigger on representation, it is whether there is a confidential relationship or not. So a written waiver would have been required before we would listened to anything having to do with the facts.

Hearing Tr. 45-6 l p. 21-25, 1.

29.     Defendant Stiger took the witness stand and testified on his own behalf. Defendant Stiger admitted that Burton discussed with him the potential conflict of interest of representing more than one defendant in a case.

30.     The Court finds that Stiger's testimony that Mr. Burton asked him whether Taylor ever sent him a money order is not reliable.[2] There would be no reason for Mr. Burton to inquire into any issue relevant to defendant Taylor because by the time Stiger spoke to Burton, defendant Taylor had concluded three proffer sessions and had an executed cooperation/plea agreement with the government. Asking Stiger questions regarding Mr. Taylor would have been of no value to Mr. Seymour's representation of Taylor. Further Mr. Fuller substantiated Mr. Burton's denial that he never asked Stiger questions of a substantive nature.

31.     Mr. Fuller testified that on one other occasion he traveled to Oklahoma City to meet with defendant Stiger without Mr. Burton accompanying him. The Court finds credible Mr. Fuller's testimony that the reason he met a second time with defendant Stiger was because defendant Stiger had been optimistic that he could raise the money to retain Mr. Fuller and the Seymour law firm. Mr. Fuller testified that there was enough indication by defendant Stiger of a prospect that he would

---

[2] Stiger testified that Burton asked him whether there were any money orders that were sent between Richard Taylor and him. Stiger testified that in response he told Mr. Burton that Richard Taylor owed him some money from Vegas and Taylor just sent it to him through the wire.

retain them, that he followed up his contact with Stiger in Oklahoma City at the transfer facility. Mr. Fuller's meeting with defendant Stiger in Oklahoma City lasted about 15 minutes.

32.     The Court finds credible Mr. Fuller's testimony that the topic of his conversation with defendant Stiger in Oklahoma City was whether defendant Stiger had the resources to retain private counsel, and whether he was willing to execute the conflict of waiver. The Court also finds credible Mr. Fuller's testimony that no confidential communications were imparted nor facts of the case discussed during the Oklahoma City meeting.

33.     The last contact that Mr. Fuller had with Stiger was in Tulsa when Stiger made his initial appearance. Mr. Burton joined Mr. Fuller at this final meeting. The Court finds credible Fuller's testimony that in Oklahoma City, Stiger gave sufficient indications of their prospective employment and willingness to sign the waiver that Burton and Fuller showed up for Stiger's initial court appearance. The record in this case substantiates Mr. Fuller's testimony that at Stiger's initial appearance, Stiger was appointed counsel to represent him in this case. Fuller and Burton's brief meeting followed Stiger's initial appearance because at that time Stiger was represented by a public defender.

34.     The Court finds that Mr. Fuller's testimony substantiated Seymour's and Burton's testimony that the conflict waiver was such an important issue that if defendant Stiger had attempted to convey any facts about the case, the attorneys would have stopped him. Although Mr. Fuller has little experience in federal criminal matters, it is clear to the Court that Mr. Fuller knows that in interviewing prospective clients who have been named as a criminal defendant, not to discuss the particulars of their case unless retained.

35.     Mr. Fuller's testimony corroborated Mr. Burton's testimony that neither attorney asked any questions of Stiger which would be unethical under the rules of professional conduct.

36.     Mr. Fuller testified that defendant Stiger never retained him or the Seymour law firm to represent him in the case.

## Conclusions of Law

The Opinion issued by the Tenth Circuit herein instructs the Court as to the law to apply in this matter. According to the Opinion, this Court is to apply two sources to determine whether Mr. Burton and/or Mr. Seymour should have been disqualified from representing defendant Taylor in this case: the Local Rules for the Northern District of Oklahoma and the standards developed under federal case law. Local Rule 83.2 states that proper attorney/client conduct is governed by the Code of Conduct by the Oklahoma Bar Association Rule 1.9. As applied to this case, Rule 1.9 indicates that to disqualify Mr. Burton, defendant Stiger must show that (1) an actual attorney-client relationship existed between defendant Stiger and Mr. Burton or the Seymour law firm, (2) the present litigation involved a matter that was substantially related to the attorneys' prior representation, and (3) the interest of defendant Taylor was materially adverse to that of Stiger's. If the evidence at the hearing established the first two elements, then an irrefutable presumption arises that a client has indeed revealed facts to the attorney that would require his disqualification. See, United States v. Stiger, 413 F.3d at 1196 (10th Cir. 2005) citing Smith v. Whatcott, 757 F.2d 1098, 1100 (10th Cir.1985).

In order to establish that an attorney-client relationship existed, defendant Stiger must show that he (1) submitted confidential information to Mr. Burton, and (2) that Stiger did so with the reasonable expectation that the lawyer was acting as his attorney. Further, an implied professional

10

relationship can exist in the context of the preliminary consultation by a prospective client with a view to retention of the lawyer, even though actual employment does not result. Id. citing, Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1383 (10th Cir. 1994).

Based on the evidence received at the hearing and in consideration of the credibility of the witnesses, the Court finds and concludes that an attorney client relationship did not exist between defendant Stiger and Mr. Burton or the Seymour law firm. The Court concludes that the evidence overwhelmingly establishes that the discussions between defendant Stiger and these attorneys were only preliminary in nature and were limited to matters of attorney fees and conflict of interest waivers.

Moreover, the Court finds that the Seymour law firm's representation of defendant Taylor did not affect defendant Stiger's "right to a fair and impartial trial." From a review of the trial transcript, the Court finds and concludes that defendant Taylor's incriminating testimony against defendant Stiger was cumulative. The following summary establishes that in most instances Taylor's testimony was merely corroborating evidence:

| | |
|---|---|
| Taylor: | Testified that he saw Stiger at Darrell's house a lot. |
| Carrie Jo Lowery: | Identified Stiger as one of Darrell Bellamy's friends. |
| Nicole Farnum: | Identified Stiger as one of Bellamy's friends. |

********************************************************************************

| | |
|---|---|
| Taylor: | Testified that he wired Stiger $500 when his car broke down on his trip from Phoenix to Tulsa. |
| Robert Taylor: | Robert Taylor is a Special Agent with the IRS. He testified that on July 1, 1998, defendant Taylor sent a Western Union from Tulsa, OK to Stiger in Dalhart, Texas in the amount of $500. |

********************************************************************************

| | |
|---|---|
| Taylor: | Testified that there were times that he sent Bellamy money via Western Union but he addressed it to Stiger. He testified that Bellamy told him to send it to Stiger. But Taylor never spoke to Stiger to find out if he had permission to send the money to Stiger. |

| | |
|---|---|
| Sara Hammake: | Testified she obtained Western Union and cashier's checks for Stiger in 1999. She testified that she was to put Stiger's name as the sender on the Western Union transfers addressed to Bellamy in Phoenix. |
| Kim Keeler: | Testified that Stiger asked her to wire transfer money for him. Stiger would give her cash to have it wire transferred through her personal bank via Western Union. |

*****************************************************************************

| | |
|---|---|
| Taylor: | Testified that he has seen Stiger in Phoenix, Arizona at Darrell's house, his aunt's house and Stiger's house. |
| Taylor: | Identified Stiger's home in Phoenix and testified that he had been in that house on at least five occasions. |
| Taylor: | Testified that he went to Stiger's house in Phoenix but it was not for the purpose of purchasing drugs. |
| Taylor: | Testified on cross examination that he had no personal knowledge that Stiger was involved in any type of drug activity with Bellamy. His only knowledge of Stiger's involvement was what he learned from Bellamy. |
| Taylor: | Testified that he never saw Stiger with drugs or large amounts of money in Phoenix. |
| Nicole Farnum: | Testified she observed Stiger and Bellamy wrapping marijuana in Saran Wrap at Bellamy's apartment in Tempe, Arizona. She also saw Bellamy and Stiger cook cocaine in her apartment in Arizona. |

*****************************************************************************

| | |
|---|---|
| Taylor: | Testified that he mostly saw Stiger in Phoenix. But he also saw him in Wichita, Kansas on 4 or 5 occasions. |
| Sara Hammake: | Testified that she met Stiger when she was 16 years old. He was a friend of her boyfriend Loso. She saw Loso and Stiger cook cocaine at Loso's house in Wichita, Kansas. She testified that Stiger gave them cocaine at his home in Phoenix for them to fly back to Wichita. |

*****************************************************************************

| | |
|---|---|
| Taylor: | Testified that he would drive to Wichita to purchase marijuana from Stiger. Taylor would bring back about 4 oz of marijuana each time he drove back from Wichita. He went to Wichita about three times. He brought back at the most, $1,200. The marijuana that Taylor purchased from Stiger in Wichita was for his personal use. |

| | |
|---|---|
| Taylor: | Testified that he never saw Stiger with a large amount of money. |
| Kim Keeler: | Keeler identified Stiger in possession of cocaine and marijuana in Wichita, Kansas. Keeler observed Stiger in possession of thousands of dollars in cash. |

*************************************************************************

| | |
|---|---|
| Taylor: | Testified that he first met Stiger at age 11 or 12 years old. Taylor has seen Stiger about 20 to 30 times in the past five years. |
| Rashona Taylor: | Rashona is Taylor's wife. She identified Stiger as a friend of her husband, Richard Taylor. |

*************************************************************************

| | |
|---|---|
| Taylor: | Identified Michael Hayes as a friend of Stiger's. |
| Sergeant Harold Adair: | A member of the Tulsa Police department, assigned to Special Investigations Division narcotics detail. He identified Stiger as being present at Michael Haye's house sometime between 6:30 and 7:00 p.m. on October 16, 2000 the night that Jennifer Natale was tortured. |

## Conclusion

Based on the evidence presented, the Court finds and concludes that neither an actual nor an implied attorney client relationship exists between defendant Kenneth Stiger and Tulsa attorney Robert Burton and the R. Thomas Seymour law firm which would warrant a motion for mistrial or an untimely motion to disqualify counsel. Further, from a review of the record in this case, the Court further finds and concludes that defendant Kenneth Stiger was not denied the "right to a fair and impartial trial." Accordingly, pursuant to the order of remand filed in this Court on August 8, 2005, [Doc. 912], the defendant's motion for mistrial is hereby DENIED.

IT IS SO ORDERED this 19th day of October, 2006.

HONORABLE H. DALE COOK
Senior United States District Judge