# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 00-CR-0126-007-CVE |
| | ) ( 09-CV-0194-CVE) |
| KENNETH WAYNE STIGER, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court are defendant Kenneth Wayne Stiger's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 1084), defendant's motion to supplement his § 2255 motion (Dkt. # 1093), defendant's motion to expand the record to include defendant's affidavit (Dkt. # 1103), and defendant's motion to expand the record to include medical records (Dkt. # 1104). Stiger argues five grounds upon which his sentence should be overturned: ineffective assistance of counsel, prosecutorial misconduct, judicial misconduct, due process violation, and "illegal sentence."[1]   Dkt. # 1084, at 4.  The United States argues that some of the claims asserted in defendant's motion are procedurally barred, and that the others are without merit.  Dkt. # 1091.

---

[1] Stiger recites these five grounds in the introduction to the argument section of his § 2255 motion. Dkt. # 1084, at 4. However, Stiger provided specific arguments as to his ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct claims only. See id. at 5-18. The Court's analysis of these three claims encompasses Stiger's claims of due process violation and "illegal sentence."

**I.**

On July 13, 2001, an eleven-count second superseding indictment (Dkt. # 100) was returned against Stiger and fifteen co-defendants, charging them with various crimes related to drug distribution. Count one charged Stiger with conspiracy to distribute cocaine, marijuana, and cocaine base. Dkt. # 100. Count four charged Stiger with conspiracy to commit laundering of money instruments. Id. at 28. On April 30, 2002 the United States filed an enhancement information (Dkt. # 439), alleging that Stiger had previously been convicted of two prior felony narcotic drug charges. Stiger went to trial in June 2002, and the jury found him guilty as to counts one and four. Dkt. # 544. Stiger was sentenced on February 20, 2003 to life imprisonment on count one, and twenty years imprisonment on count two, to run concurrently. Dkt. # 764, at 2.

The jury found Stiger guilty based on extensive evidence that he was involved in a wide-ranging conspiracy to distribute cocaine and marijuana in Phoenix, Tulsa, Wichita, Detroit, and elsewhere. The conspiracy was headed by Darrell Bellamy. A witness testified that she saw Stiger and Bellamy packaging marijuana in mustard and black pepper in preparation for transport. Trial Tr., at 644.[2] Witnesses who acted as drug couriers for Bellamy's operation testified that they received cocaine for transport from Stiger in Phoenix and Wichita. Id. at 908-13, 942. On one occasion, Jennifer Natale, a drug courier for the conspiracy, was instructed by Stiger to pick up cocaine from Bellamy. Id. at 913. Bellamy's aunt testified that Stiger stored marijuana at her house in Tulsa. Id. at 2220-21. Bellamy paid his aunt for this storage. Id. One of Bellamy's girlfriends testified that she saw Stiger and a co-conspirator counting a large amount of money at a hotel in

---

[2]    Because the trial transcripts were filed before CM/ECF was implemented, they are not available electronically and are stored in paper format in the Court Clerk's office.

Minnesota. Id. at 2380-81. The girlfriend was at the hotel visiting Bellamy. Id. One of Bellamy's drug dealers testified that he wired money to Stiger and co-conspirator Marlin Mack when their car broke down on the way from Phoenix to Tulsa. Id. at 1560.

A police officer testified as to hundreds of calls made between telephone numbers linked to Stiger and his co-conspirators, including Bellamy, other drug dealers in the Wichita area, and a drug courier who transported drugs from Phoenix to Tulsa, Phoenix to Wichita, and Phoenix to Detroit. Id. at 1769-92. Bellamy's telephone was used to call Stiger shortly after co-conspirators William Ray and Mack were implicated in a drug seizure at the Tulsa airport. Id. at 2460. Witnesses testified that Stiger directed them to wire money via Western Union to "Devon Chase," which was one of Bellamy's aliases. Id. at 730, 1193.

On October 16, 2000, two people stole Bellamy's drug money from Jennifer Natale. When she informed Bellamy, he accused her and her boyfriend of stealing his money and forced her into a car. Bellamy called Stiger, who was at a hospital. Id. at 875. Bellamy drove by the hospital, where Stiger came out and threatened Jennifer Natale. Id. at 975. Later that evening, Bellamy, Stiger, and other co-conspirators held Jennifer Natale captive. Co-conspirators burned Jennifer Natale's feet with boiling grease and burned her arm with an iron while Stiger held a gun to her head. Id. at 980-83.

During trial, Stiger moved for a mistrial based on an alleged conflict of interest of co-defendant Richard Taylor's attorney. Trial Tr., at 1630-31. The Court overruled the motion. Trial Tr. at 1632.

Stiger appealed his judgment and commitment. Dkt. # 766. The Tenth Circuit issued an opinion affirming in part, but reversing on the failure to have an evidentiary hearing on the alleged conflict of interest. United States v. Stiger, 371 F.3d 732 (10th Cir. 2004) (Stiger I). Stiger filed a petition for rehearing and a petition for rehearing en banc. The Tenth Circuit denied the petition for rehearing en banc but granted the petition for rehearing only as to alleged sentencing errors in light of United States v. Booker, 543 U.S. 220 (2005), which was decided while Stiger's case was on appeal.[3] 10th Cir. Dkt. # 1792811. After rehearing, the Tenth Circuit vacated its previous opinion in Stiger I and substituted an opinion affirming in part and reversing in part Stiger's conviction and sentence.[4] United States v. Stiger, 413 F.3d 1185 (10th Cir. 2005); Dkt. # 912 (Stiger II). His conviction and sentence were affirmed; the reversal was of the district court's ruling on Stiger's motion for a mistrial without first holding an evidentiary hearing. The Tenth Circuit remanded the case with instructions for an evidentiary hearing on the alleged conflict of interest. Dkt. # 912, at 22. The Court held an evidentiary hearing on May 4, 2006, Dkt. ## 978; 984, and issued an opinion and order (Dkt. # 988) finding that there was no conflict of interest and that the attorney in question should not have been disqualified. The Court denied Stiger's motion for a mistrial. Dkt. # 988, at 13. Stiger appealed. Dkt. # 999. The Tenth Circuit affirmed the Court's decision. Dkt. # 1052. Stiger filed a petition for writ of certiorari, which was denied on April 14, 2008. Dkt. # 1063. Stiger then filed the instant motion under § 2255.[5]

---

[3]  The Tenth Circuit thereafter found no sentencing error. See Dkt. # 912.

[4]  Stiger then filed a petition for a writ of certiorari, which was denied on November 28, 2005. Dkt. # 949.

[5]  The judge who originally tried and sentenced Stiger, the Honorable H. Dale Cook, passed away and the case was randomly reassigned. See Dkt. # 1086.

4

### III.

Stiger argues that his sentence should be set aside on three grounds: ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct.[6] The United States argues that Stiger's claims, other than ineffective assistance of counsel, are procedurally barred. Stiger responds that he intended to bring those claims under ineffective assistance of counsel because "each instance should have been brought on direct appeal." Dkt. # 1102, at 6-7. He argues that ineffective assistance of counsel was the cause of any procedural default.

A.   **Ineffective Assistance of Counsel**

Stiger makes numerous allegations of ineffective assistance of counsel.[7] A criminal defendant may be deprived of his constitutional rights if his counsel fails to "render 'adequate legal assistance.'" Strickland v. Washington, 466 U.S. 668, 686 (1984). The Supreme Court has outlined a two-part test for ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient . . . Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. The deficiency inquiry is fact-specific, and the court must determine whether "counsel's representation fell below an objective standard of reasonableness," considering all of the circumstances in a case. Id. at 688. There is a strong presumption that counsel's conduct was reasonable. Id. at 689. Further, the defendant must "affirmatively prove" that the deficient performance was prejudicial to the defense, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[6]   See n.1, supra.

[7]   A claim of ineffective assistance of counsel may be brought in a § 2255 motion, regardless of whether the defendant raised the issue on direct appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

been different." Id. at 693-94. A court need not address both components of the inquiry if the defendant cannot make a showing on one. Id. at 697.

Stiger was represented by several different attorneys over the course of his trial and appeals. On September 14, 2001, attorney Terry Weber filed a motion to withdraw. Dkt. # 227. In that motion, Weber stated that Stiger had requested a new attorney at his detention hearing on September 13. Weber stated that he and Stiger were having difficulty communicating and determining how to proceed. The Court granted Weber's motion to withdraw. Dkt. # 230. Stiger was then represented by Thomas McCormick. Stiger filed a pro se motion to have McCormick replaced (Dkt. # 366) because, Stiger argued, McCormick was providing ineffective assistance. McCormick filed a motion to withdraw (Dkt. # 389), which was granted (Dkt. # 396). Mark Matheson represented Stiger during his trial. After trial, Stiger retained Susan G. James, and Matheson withdrew. Dkt. # 637. James represented Stiger during sentencing and on his appeals.

1.  Failure to object to the §851 information

On April 30, 2002, the United States filed an enhancement information pursuant to 21 U.S.C. § 851(a)(1) (Dkt. # 439), alleging that Stiger had two prior felony convictions for drug offenses in California. Stiger argues that his counsel was deficient in failing to object to this information "way before trial began at the pre-trial stage," Dkt. # 1084, at 6, and in failing to argue that the California offenses were too old to be used as enhancement factors under the sentencing guidelines. Dkt. # 1093, at 2.

Stiger confuses the requirements under the sentencing guidelines with those for a sentence imposed under 21 U.S.C. § 841. On direct appeal, Stiger had argued that his sentence was constitutionally infirm because the judge, rather than a jury, had found that he had two prior felony

drug convictions. See Dkt. # 912, at 11. The Tenth Circuit determined that any error under the sentencing guidelines "would be rendered harmless beyond a reasonable doubt by the presence of the mandatory sentence outlined in § 841(b)(1)(A)."[8] Dkt. # 912, at 14. By this logic, any failure by counsel to object to the use of Stiger's prior convictions for sentencing guidelines purposes cannot have been prejudicial. Whether or not the prior convictions alleged in the § 851 information could be relevant for sentencing under the guidelines is immaterial; the information was relevant to sentencing under § 841. Therefore, counsel's failure to argue that the charges in the § 851 information were "out of time," Dkt. # 1084, at 6, was not deficient or prejudicial because any such argument would have been meritless.

Further, Stiger's counsel did file objections to the § 851 information. Dkt. # 754. Counsel argued that the convictions listed in the information should not be used to enhance his punishment under § 851.[9] Id. Stiger's counsel also filed written objections to the presentence report (Dkt. # 755), including an objection to the criminal history points and criminal history score. This shows

---

[8] The Tenth Circuit determined that the record was not clear whether Stiger was sentenced under the guidelines or under § 841(b)(1)(A). Dkt. # 912, at 14. Section 841(b)(1)(A) provides a mandatory sentence of life imprisonment if a person commits a violation of § 841(b) after two or more convictions for a felony drug offense. Unlike under the sentencing guidelines, there is no time limit on the prior convictions relevant under § 841.

[9] Stiger now argues, for the first time, that his sentence is invalid because one of his prior convictions was for a misdemeanor, not a felony. Dkt. # 1093, at 2. Stiger attaches an excerpt from the California Health and Safety Code in support of this argument. Dkt. # 1084, at 22. However, this excerpt does not show that one of his prior convictions was for a misdemeanor. All it shows is that the punishment for possession of a depressant is punishable by imprisonment of up to a year. Id.; CAL. HEALTH & SAFETY CODE §§ 11350, 11054. Possession of other controlled substances "shall be punished by imprisonment in the state prison." Id. The § 851 information alleged that Stiger was convicted of possessing cocaine. Counsel's performance was not deficient for failing to object on this ground, because such an objection would have been meritless.

7

that Stiger's counsel was aware of sentencing issues, and was advocating on Stiger's behalf at sentencing. Stiger's assertion that counsel should have filed this objection earlier does not establish ineffective assistance of counsel. The timing of the objection can not have been prejudicial because the § 851 information was relevant only to sentencing, not to trial. The objections were filed prior to sentencing, and the court considered and rejected them. Dkt. # 758. Counsel's performance in relation to the § 851 information and use of Stiger's prior convictions at sentencing was neither deficient nor prejudicial.

2.    <u>Failure to introduce evidence of his surgery</u>

Stiger alleges that his counsel was ineffective because he failed to introduce exculpatory evidence. Stiger argues:

> It was said that petitioner was on the scene at the time that sales and drug dealing went down but! The petitioner has conclusive proof that at the time of the alleged transaction took place, he was at the hospital after having surgery (SEE: Affidavit and Exhibit)[10] and for trial counsel to allow this testimony to go un-contested, and not call the doctor for a witness, that would have cleared the petitioner is a 'Travesvisity' of injustice.

Dkt. # 1084, at 8. In his reply to the United States' response to his motion, Stiger argues that "counsel was ineffective for failing to present evidence that Stiger could not have been present at the time Jennifer Natale was tortured." Dkt. # 1102, at 2. Throughout this case, Stiger's suggestion of what evidence his medical records would rebut has been inconsistent. The court cannot determine whether Stiger argues it would rebut Jennifer Natale's testimony that Stiger took part in her torture, or if it would show that he was not present during a particular drug sale. If he is arguing the latter,

---

[10]    The affidavit and exhibit were not attached to Stiger's § 2255 motion, but he filed a motion to expand the record to include medical records (Dkt. # 1104). The Court has considered these medical records.

the Court finds that he was not prejudiced by failure to introduce evidence that he was not present at one drug sale, given the substantial evidence that Stiger participated in a multitude of drug sales during the conspiracy.

In his affidavit, Matheson states:

> During trial, Mr. Stiger wanted me to call as a witness a doctor he said performed surgery on him, to establish that he was not at a meeting between the co-conspirators. In an exercise of my professional judgment, I chose not to call the doctor as a witness because the dates given did not match up to the alleged events.

Dkt. # 1091-2, at 2.  Matheson's decision was within "the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  Stiger's medical records state that he was admitted to the hospital on October 17, 2000.  Dkt. # 1104, at 20.  Jennifer Natale testified that she was tortured on October 16, 2000.[11]  Trial Tr., at 969.  Matheson's decision to omit Stiger's medical evidence was not deficient because it was reasonable for him to determine, in the exercise of his professional judgment, that the evidence would not rebut Jennifer Natale's testimony.  As Matheson states, the dates do not match up.  Matheson's decision was based on a reasonable exercise of his professional judgment, and was thus not deficient.[12]

3.    The United States' failure to prove a conspiracy

Under the heading of ineffective assistance of counsel, Stiger argues that the United States did not prove that a conspiracy existed.  Dkt. # 1084, at 9-10.  Stiger does not explain why this is

---

[11]  Jennifer Natale also testified that, on the day of the torture, Stiger was on crutches and had been at a hospital. Trial Tr., at 975.  This is consistent with the "urgent care clinic facility fee" for October 16, 2000, in Stiger's medical records.  Dkt. # 1104, at 3.  However, he was not admitted to the hospital until the next day.  Id. at 20.

[12]  Further, James was aware that Stiger claimed his surgery as an alibi, and discussed it with the judge at sentencing.  See Sentencing Tr. at 11-12.  This issue was not brought up on appeal, which suggests that James made a decision similar to Matheson's.

ineffective assistance of counsel. At the close of the United States' evidence, Matheson moved for a judgment of acquittal based on insufficient evidence. Trial Tr., at 2548-49. The motion was overruled. Id. at 2549. Finding that "[t]he record wholly belies Mr. Stiger's assertions that insufficient evidence exists to prove his membership in the Bellamy conspiracy," the Tenth Circuit affirmed the denial of the motion for acquittal. Stiger II, Dkt. # 912, at 16. Stiger does not identify any act or omission relating to the sufficiency of the evidence from which the Court could determine that Stiger's counsel was ineffective.

4.     Refusal to let Stiger testify on his own behalf

Stiger argues that his counsel was ineffective because Matheson prevented Stiger from testifying on his own behalf. Dkt. # 1084, at 10. "A criminal defendant has a constitutional right to testify in his own behalf at trial." Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004) (citing Rock v. Arkansas, 483 U.S. 44 (1987)). "The decision whether to testify lies squarely with the defendant;" however, "[c]ounsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant." Id. If counsel were to deprive the defendant of his right to testify in his own defense, counsel's performance would be deficient under the first prong of Strickland. Id. However, the defendant must still establish "a reasonable probability that defendant's testimony would have raised in a juror's mind a reasonable doubt concerning his guilt." Id; see also Battle v. Sirmons, 304 Fed. App'x 688, 693 (10th Cir. Dec. 22, 2008) (requiring the defendant to "also show prejudice to satisfy Strickland");[13] United States

---

[13]     Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

v. Bailey, 245 Fed. App'x 768, 771 (10th Cir. Aug. 14, 2007) ("[w]e reject Mr. Bailey's contention that Strickland prejudice need not be shown when the case involves the right to testify").

In support of his argument, Stiger provides a sworn[14] statement that:

> I . . . wished to testify in my own defense during my criminal trial. I maintained that position throughout proceedings, believing wholeheartedly that the jury needed to hear my side of the story. Counsel overbore my will by utilizing threats to deter me from testifying. I sincerely believe that my testimony in my own defense would have swayed the jury in my favor. I believe that counsel was ineffective for misleading me.

Dkt. # 1103, at 2. Matheson disputes Stiger's version of events. Matheson states:

> Mr. Stiger never indicated he wished to testify in his own defense; in fact, we discussed him taking the stand but he chose not to. In addition, I advised him that this would not be in his best interests. Mr. Stiger had multiple prior felony drug convictions that the prosecution would have been able to use in cross-examining him. After consultation, Mr. Stiger chose not to take the stand in his own defense.

Dkt. # 1091-2, at 2-3. At trial, Matheson stated on the record: "I have discussed with my client his right to take the stand. We've discussed it and he has decided not to." Trial Tr., at 2597.

The Court need not resolve the factual issue of whether Stiger was, in fact, prevented from testifying because Stiger has not satisfied Strickland's prejudice prong on this claim. Stiger does not state what his testimony would have been, had he taken the stand. It is therefore impossible to determine that his hypothetical testimony would create a reasonable doubt regarding the extensive evidence that established Stiger's participation in the conspiracy. Compare Bailey, 245 Fed. App'x at 771 (finding that the prejudice prong of Strickland was not satisfied where the defendant "gave no suggestion of the content of his testimony or how it would have affected the jury's consideration

---

[14] Stiger makes the statement "under penalty of perjury pursuant to 28 U.S.C. § 1746." Dkt. # 1103, at 2. However, the statement is not dated, as required by § 1746. Id. Nevertheless, the Court will consider Stiger's statement.

11

of the evidence") with Cannon, 383 F.3d at 1172 (remanding to the district court for a finding regarding prejudice where self-defense was an issue). Stiger has not shown prejudice from counsel's alleged prevention of his testimony.

5.       Failure to file an interlocutory appeal

Stiger argues that his counsel was ineffective for failing to file an interlocutory appeal from the denial of his motion to sever. Dkt. # 1084, at 12. Stiger appealed the denial of his motion to sever, and the Tenth Circuit affirmed. Stiger II, Dkt. # 912, at 22-24. The Tenth Circuit held that Stiger could not make the "strong showing of prejudice" required for a reversal of the trial court's decision. Id. at 23-24. Even if an interlocutory appeal would have been permitted, Stiger cannot show prejudice from a delay of the appeal until after final judgment. Further, Stiger does not explain how an earlier appeal would have changed the Tenth Circuit's decision, and there is no reason why it would. Stiger has not shown any prejudice from his counsel's failure to file an interlocutory appeal from the denial of his motion to sever.

6.       Failure to bring procedurally barred claims on appeal

The United States argues that many of the claims in Stiger's § 2255 motion are procedurally barred because they were or should have been raised on appeal. In his reply, Stiger asserts that his appellate counsel was ineffective for failing to bring the procedurally-barred claims. This argument is completely meritless regarding the claims that were brought on appeal. Further, counsel's performance can be neither deficient nor prejudicial in failing to bring frivolous or nonsensical claims on appeal. To the extent that Stiger's remaining claims are meritless, see infra, his appellate counsel was not ineffective for failing to bring them. Finally, Stiger's bare assertion that his

appellate counsel was ineffective is devoid of support. Stiger points to no other conduct to support this claim.

B.     **Prosecutorial Misconduct**

Stiger alleges two types of prosecutorial misconduct in this case. First, he argues that the prosecution knowingly presented perjured testimony. Dkt. # 1084, at 14. Second, he argues that the prosecution improperly introduced excluded evidence of a 1993 arrest in the jury instructions.[15] Dkt. # 1102, at 7. The United States argues that Stiger's prosecutorial misconduct claims are procedurally barred because he did not bring them on appeal. Dkt. # 1091, at 22.

"A defendant's failure to present an issue on direct appeal bars him from raising the issue on his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complaints, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." United States v. Cook, 997 F.2d 1312, 1320 (10th Cir. 1993).

On appeal, Stiger did not generally raise the issue of perjured testimony. However, he did object on appeal to Officer Adair's testimony, arguing that it was summary testimony based on evidence not admitted at trial. The Tenth Circuit affirmed the admission of Adair's testimony. Stiger II, Dkt. # 912, at 25. The only specific testimony that Stiger points to in his perjury allegations is Adair's. Stiger claims it "was made up of prior inconsistance [sic] statements which was [sic] impeached during cross examination." Dkt. # 1084, at 14. This claim should have been raised on appeal along with the other challenges to Adair's testimony. Stiger's conclusory allegation

---

[15]     Stiger raised this argument for the first time in his reply to the United States' response to his motion (Dkt. # 1102), but the Court will address it nonetheless.

of ineffective assistance of counsel does not establish cause for the failure to bring this claim, especially in light of appellate counsel's having raised other claims regarding Adair's testimony. Further, Stiger does not claim that Adair perjured himself or that the prosecution knew about it. Therefore, he has not shown prejudice that excuses his procedural default.

Likewise, Stiger's general perjury allegation should have been brought on appeal, and he cannot establish cause or prejudice regarding his failure to do so. Stiger points to no specific testimony that was perjured. He makes blanket conclusory suggestions that prosecutors "know witnesses lied." Dkt. # 1084, at 14. Stiger bases this allegation on the fact that "[t]he prosecutor had the Grand Jury Transcripts of all and each one of these witnesses. They met with each one of them and prepared them for trial. He knew what each witness was going to testify about and what they were going to say or should said [sic] versus what was said." Dkt. # 1084, at 16. At trial, witnesses were questioned about inconsistencies between their testimony to the grand jury and their testimony at trial.[16] E.g., Trial Tr. at 744, 1394, 2194. None of this is evidence that any witness committed perjury at trial or that the United States knew of any untruthfulness by witnesses at trial. Stiger has not shown prejudice excusing the procedural default of this claim.

Stiger's allegation regarding the jury instructions is incomprehensible. The only reference to the year 1993 in the jury instructions is the recitation of the second superceding indictment, which charged that the conspiracy began in or around December 7, 1993. Dkt. # 540, at 18. The instructions make no reference to Stiger's having been arrested prior to the conspiracy. Dkt. # 540. Evidence of Stiger's 1993 arrest was not introduced at trial because it was excluded. See, e.g.,

---

[16] Alicia Hardwick admitted that she lied to the grand jury when she denied knowing that Bellamy was involved in dealing drugs. Trial Tr. at 1394. The prosecution did not rely on this perjured testimony; it relied on her testimony at trial that Bellamy was dealing drugs.

Sentencing Tr. at 8-9. Stiger cannot possibly have been prejudiced by a failure to raise this nonsensical claim. Therefore, it is procedurally defaulted.

C.     **Judicial Misconduct**

Stiger argues that his sentence should be set aside because the judge imposed an illegal sentence, did not sever his trial, and did not require the jury to find him guilty of conspiracy.[17] The United States argues that each of these claims is procedurally barred.

Claims that were already considered and disposed of on direct appeal are procedurally barred. United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). The Tenth Circuit considered and rejected Stiger's argument that his prior convictions could not be used in determining his sentence. Stiger II, Dkt. # 912, at 14. Thus, Stiger's claim that the judge "allowed the government to seek to career the petitioner on very old and out of time priors, and misdemeanors that was not even eligible under § 851," Dkt. # 1084, at 16, is procedurally barred. The Tenth Circuit considered and rejected Stiger's appeal of the judge's denial of his motion to sever. Stiger II, Dkt. # 912, at 23-24. That claim is procedurally barred. Finally, the Tenth Circuit considered and rejected Stiger's argument that his conviction is invalid because the verdict forms did not require the jury specifically to find him guilty of the overarching conspiracy. Id. at 7-8. The substance of that argument is identical to the one he now makes in his § 2255 motion, and thus is procedurally barred.

---

[17]   Stiger also argues that the judge would not allow "a witness, Darrell Bellamy who was on the defense witness list to testify in behalf of the defendant." Dkt. # 1084, at 17. In his reply to the United States' response, Stiger argues he "articulated an issue regarding the propriety of the District Court's denial of his challenge to the surprising, unexpected testimony of Darrell Bellamy." Dkt. # 1102, at 7. The Court is confused as to whether Stiger is alleging error that Bellamy testified, or error that Bellamy did not testify. In fact, Bellamy did not testify at trial, as was his constitutional right.

15

**IT IS THEREFORE ORDERED** that defendant's motion to supplement his § 2255 motion (Dkt. # 1093), defendant's motion to expand the record to include defendant's affidavit (Dkt. # 1103), and defendant's motion to expand the record to include medical records (Dkt. # 1104) are **granted**. The Court has considered all of the arguments and materials Stiger submitted in connection with his § 2255 motion.

**IT IS FURTHER ORDERED** that defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 1084) is **denied**. A separate judgment is entered herewith.

**DATED** this 19th day of November, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT